UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RANDOLPH JACKSON AND JANET | § | No. 5:15–CV–524–DAE |
| MEYERS, individually and as heirs of | § | |
| the estate of Matthew Charles Jackson, | § | |
| and ERICA FITTS, individually and as | § | |
| next friend of J.C.J., a minor, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| SUSAN PAMERLEAU, individually, | § | |
| BEXAR COUNTY, TEXAS, and | § | |
| ANTHONY THOMAS, individually, | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING DEFENDANT BEXAR COUNTY AND
SHERIFF PAMERLEAU'S PARTIAL MOTION TO DISMISS;
(2) GRANTING IN PART DEFENDANT THOMAS' MOTION TO STAY

On February 1, 2016, the Court heard oral argument on the Amended

Motion to Dismiss (Dkt. # 35) filed by Defendants Bexar County, Texas ("Bexar

County") and Sherriff Susan Pamerleau, and the Motion for Protection and

Alternative Motion to Stay (Dkt. # 22) filed by Defendant Deputy Anthony

Thomas.  Tim Maloney, Esq., appeared on behalf of Plaintiffs Randolph Jackson

and Janet Meyers, individually and as heirs of the estate of Matthew Charles

Jackson, and Erica Fitts, individual and as next friend of J.C.J., a minor

(collectively, "Plaintiffs").  Albert Lopez, Esq., appeared on behalf of Defendants

1

Bexar County and Sherriff Pamerleau.  Matthew F. Wymer, Esq., appeared on behalf of Deputy Thomas.  After careful consideration of the memoranda in support of and in opposition to the motions, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Defendant Bexar County and Ms. Pamerleau's Partial Motion to Dismiss (Dkt. # 35), **DENIES AS MOOT** Defendant Thomas' Motion for Protection, and **GRANTS IN PART** Defendant Thomas' alternative Motion to Stay the Case (Dkt. # 22).

<u>FACTS</u>

At approximately 4:00 a.m. on August 31, 2013, Matthew Jackson was travelling on Loop 1604 and Nacogdoches Road in San Antonio, Texas, when his vehicle "came into close contact to" Defendant Thomas' personal vehicle, and the men stopped their vehicles on the road's shoulder.[1]  ("Am. Compl.," Dkt. # 29 ¶ 9.)  According to Plaintiffs, Mr. Jackson, who was unarmed, exited his vehicle and approached Deputy Thomas' vehicle; Deputy Thomas was wearing his Bexar County Deputy Sheriff's uniform and armed with his service weapon.  (<u>Id.</u>) Plaintiffs allege that Deputy Thomas fired eight shots from his service weapon, striking Mr. Jackson.  (<u>Id.</u>)  Mr. Jackson returned to his car and died in the driver's seat.  (<u>Id.</u>)  As a result of these events, Deputy Thomas has been indicted for first degree murder (Dkt. # 22 ¶ 10; Dkt. # 22, Ex. 1) in a case currently pending before

---

[1] Deputy Thomas states that the vehicles pulled off the road after Mr. Jackson's passenger-side mirror struck his vehicle.  (Dkt. # 22 ¶ 5.)

the 379th Judicial District Court of Bexar County.  (Dkt. # 22 ¶ 11; Dkt. # 22, Ex. 2.)

Plaintiffs allege that Deputy Thomas has a history of misconduct and is unaware of the Bexar County Sheriff's Department ("BCSD") policies and procedures.  (Am. Compl. ¶ 11.)  Plaintiffs specifically cite four alleged incidents of Deputy Thomas' misconduct: (1) In June 2008, Deputy Thomas was working off-duty at a night club without an off-duty permit when a homicide occurred; Deputy Thomas did not report the incident to the San Antonio Police Department ("SAPD").  (Id. ¶ 11-2.)  (2) In November 2009, an arrestee reported $1,100 upon discharge after Deputy Thomas made an off-duty arrest; Deputy Thomas was cited for failure to secure personal property.  (Id.)  (3) In December 2011, Deputy Thomas was the subject of a complaint for theft.  (Id.)  (4) Deputy Thomas was issued a letter of reprimand in March 2013 after disobeying a direct order from Deputy Sheriff Tammy Burr.  (Id.)  Plaintiffs further allege that the BCSD has not evaluated Deputy Thomas' performance since 2005.  (Am. Compl. ¶ 11-2.)  Finally, Plaintiffs state that the BCSD is using a policy and procedure manual written in 2003, has not implemented an "Officer Concern Program," and does not have a software program that could flag potentially dangerous police officers.  (Id.)

Plaintiffs' Amended Complaint alleges three claims under 42 U.S.C. § 1983: (1) a claim against Deputy Thomas for excessive use of force (Am. Compl.

3

¶¶ 12–21); (2) a claim against Defendant Bexar County for failure to train, and for retention of an "[un]sutiable" deputy (Id. ¶¶ 12, 22–24); and (3) a claim against Sheriff Pamerleau for supervisory liability.  (Id. ¶¶ 25–26.)  Finally, Plaintiffs raise claims against Defendants under the Texas Tort Claims Act for negligent use of tangible City property, negligent entrustment of a firearm, and negligent supervision.  (Id. ¶ 27.)  Plaintiffs seek damages in the amount of ten million dollars, and attorney's fees.  (Id. ¶ 29.)

On June 24, 2015, Plaintiffs filed a Complaint against Bexar County, Sheriff Pamerleau, and Deputy Thomas (collectively, "Defendants").  (Dkt. # 1.)  On November 13, 2015, Deputy Thomas filed the instant Motion for Protection and Alternative Motion for Stay.[2]  (Dkt. # 22.)  Plaintiffs filed a response on November 23, 2015.  (Dkt. # 24.)  On December 28, 2015, Plaintiffs filed an Amended Complaint, with leave of Court.  (Am. Compl.)  On December 29, 2015 Defendants Bexar County and Sheriff Pamerleau filed the Instant Amended Motion to Dismiss.  (Dkt. # 35.)  On January 8, 2016, Plaintiffs filed their response.  (Dkt. # 38.)

---

[2] This Court will consider these pleadings even though they were filed before Plaintiffs filed their First Amended Complaint, because the Defendant relies on his own telling of the facts and makes no citation to the moot Original Complaint.

4

I.  <u>Motion to Dismiss</u>

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

B. <u>Whether Supervisory Liability Claim Against Sheriff Pamerleau Should be Dismissed</u>

Sheriff Pamerleau has pled the defense of qualified immunity as to her supervisory liability claims.  (Dkt. # 35 ¶ 3.)  "The doctrine of qualified immunity

protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Thompson v. Upshur Co., 245 F.3d 447, 456 (5th Cir. 2001).  Qualified immunity is "an immunity from suit rather than a mere defense to liability," and "is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005).  Accordingly, it is of the utmost importance to address "immunity questions at the earliest possible stage in litigation." Anderson v. Creighton, 483 U.S. 635, 640, n. 2 (1987).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.  Accordingly, "[q]ualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375 (2006) (quoting Malloy v. Briggs, 475 U.S. 335, 341 (1986)).  When the defense of qualified immunity is plead, the plaintiff bears the burden of showing the "supervisor's 'deliberate indifference to the

known or obvious fact that . . . constitutional violations would result," usually by "demonstrat[ing] at least a pattern of similar violations"—even at the motion to dismiss stage.  Rios v. City of Del Rio, Tex., 444 F.3d 417, 427 (5th Cir. 2006) (quoting Johnson v. Deep E. Tex. Regional Narcotics, 379 F.3d 293, 309 (5th Cir. 2004)).

     1.  Whether Plaintiffs Have Pled Sufficient Facts to Overcome Qualified Immunity

Plaintiffs seeking to sue a public official under 42 U.S.C. § 1983 may overcome qualified immunity by pleading a claim for supervisory liability. However, Sheriff Pamerleau alleges that Plaintiffs' supervisory liability claim fails as a matter of law, because Plaintiffs have failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983.  (Dkt. # 35 ¶ 5.)

"Section 1983 offers no *respondeat superior* liability," nor are supervisory officials "liable for the actions of subordinates on any theory of vicarious liability."  Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); Upshur Co., 245 F.3d at 459 (quoting Thompkins v. Belt, 828 F.3d 298, 303 (5th Cir. 1987)).  "Plaintiffs seeking recovery under a failure to train or supervise rationale must prove that the police chief failed to control an officer's known propensity for the improper use of force."  Khansari v. City of Houston, 14 F. Supp. 3d 842, 866 (S.D. Tex. Apr. 9, 2014) (quoting Roberts, 397 F.3d at 292 (internal quotes omitted)).

7

Where a supervisory liability claim is raised against a sheriff for an inferior officer's violation of an individual's constitutional rights, the sheriff

> is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's right; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.

Upshur Co., 245 F.3d at 459; see also Estate of Davis, 406 F.3d at 381.  Sheriff Pamerleau argues that Plaintiffs' pleadings do not state a claim for which relief can be granted, because their pleadings do not allege sufficient facts to satisfy this test. Where a plaintiff has failed to allege facts that could establish deliberate indifference to the plaintiff's constitutional rights—the third prong of the supervisory liability test—the court need not address the other prongs of the test. See id. at 382 ("Because the case falters on the requirement of deliberate indifference, we need not address the other two prongs of supervisory liability."); Goodman v. Harris Co., 571 F.3d 388, 395 (5th Cir. 2009) ("Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability.")  Accordingly, we will first address the third prong of the supervisory liability test.

2. <u>Whether Plaintiffs Have Pled Sufficient Facts to Demonstrate a Failure to Train or Supervise Constituted Deliberate Indifference to the Decedent's Constitutional Rights</u>

"'Deliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Hobart v. City of Stafford</u>, 784 F. Supp. 2d 732, 751 (S.D. Tex. Apr. 29, 2011) (quoting <u>Brown v. Bryan Co.</u>, 219 F.3d 450, 457 (5th Cir. 2000) ( <u>see also</u> <u>Board of Cty. Comm'rs of Byran Cty. v. Brown</u>, 520 U.S. 397, 410 (1997).  "[P]roof of deliberate indifference[ ] generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" <u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 370 (5th Cir. 2003).  To make a showing of deliberate indifference, plaintiffs "must demonstrate 'at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation.'" <u>Roberts</u>, 397 F.3d at 293 (quoting <u>Burge</u>, 336 F.3d at 370); <u>see</u> <u>Estate of Davis</u>, 406 F.3d at 383 ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.")

In the Fifth Circuit, plaintiffs bear a heavy burden to show a "pattern of similar incidents." <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798 (5th Cir. 1998). For example, in <u>Estate of Davis</u>, a supervisory liability case against the supervisors of a police officer who shot and killed a man during the execution of a search and

arrest warrant, the court found plaintiffs had not pled facts demonstrating a

substantial risk of serious harm.  406 F.3d at 384.  Even though plaintiffs showed

that the police officer had inappropriately fired his weapon during training

exercises on three occasions, received a complaint in association with a traffic

stop, and had exposed his genitals on more than one occasion, these acts did "not

involve excessive force with a deadly weapon resulting in harm to a citizen in a

context similar to the present case," and were insufficient to prove "deliberate

indifference."  Id.  Likewise, in Roberts, a supervisory liability case involving a

police officer who killed a man during a traffic stop, the Court found that plaintiffs

did not meet their burden of proving "deliberate indifference."  397 F.3d at 295.

The court found that the plaintiffs' showing that the police officer had displayed

his weapon during previous traffic stops was "fundamentally different from a

propensity to use deadly force in the course of ordinary traffic stops," and was

insufficient to put the police officer's supervisor on notice that the officer "might

use excessive force" in the particular context of a traffic stop.  Id.

     Plaintiffs here have not alleged sufficient facts to show a "pattern of

similar incidents" such that Sheriff Pamerleau was aware of Deputy Thomas'

dangerous propensities, yet remained deliberately indifferent to this danger.

Synder, 142 F.3d at 798.  Plaintiffs cite four alleged incidents of Deputy Thomas'

misconduct: two of these incidents involve theft or failure to secure personal

10

property (Am. Compl. ¶¶ 11-2); one incident involves insubordination to a superior officer (id.); the final incident involves a failure to report a homicide, despite being present at the crime scene.  (Id.)

      The allegations of theft raised against Deputy Thomas, while troubling, are not sufficiently similar to the alleged offense of homicide to meet Plaintiff's burden to show a "pattern of similar incidents" to which Sheriff Pamerleau showed deliberate indifference.  Likewise, Deputy Thomas' insubordination to a superior officer bears no resemblance to the instant alleged offense of homicide, and does not help Plaintiffs meet their burden to show that Deputy Thomas has engaged in a pattern of similar incidents.  Even Deputy Thomas' failure to *report* a homicide that occurred while he was working off-duty at a nightclub is fundamentally different from an alleged propensity to *commit* homicide while off-duty.

      Plaintiffs have not met their burden under this test to allege facts that could show Sheriff Pamerleau's deliberate indifference to the possibility that Deputy Thomas "might use excessive force" under any circumstance, particularly not in the situation here.  Plaintiffs have not pled sufficient facts to demonstrate that Sheriff Pamerleau's failure to train or supervise Deputy Thomas constituted deliberate indifference to Mr. Jackson's constitutional right to be free from excessive force.  Accordingly, Plaintiffs cannot overcome Sheriff Pamerleau's

claim to qualified immunity, and the supervisory liability claim against Sheriff Pamerleau is hereby **DISMISSED**.

C. <u>Claim under Texas Tort Claims Act</u>

Plaintiffs' Amended Complaint asserts a claim for liability under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101 *et. seq.*, "insofar as Defendants are a 'governmental unit' . . ."  (Am. Compl. ¶ 27.) Plaintiffs specifically allege that Defendants are liable for: (1) "[n]egligent use of tangible City property (a firearm)"; (2) "[n]egligent entrustment of the firearm"; (3) "[n]egligent supervision of Anthony Thomas."  (<u>Id.</u>)

Where a plaintiff's cause of action is based only upon alleged intentional torts, TTCA claims are appropriately addressed at the motion to dismiss stage.  <u>See</u> <u>Whittington v. City of Cuero</u>, No. V–06–0011, 2007 WL 951864, at *11 (S.D. Tex. 2007).  Here Defendants argue, and the Court agrees, that Plaintiffs' three TTCA claims all arise from an alleged instance of excessive use of force, and fail to state a claim under the Texas Tort Claims Act upon which relief can be granted.  Further, Plaintiffs' counsel stated during the February 1, 2016 hearing that they no longer wish to pursue these claims against any Defendant. Accordingly, Plaintiffs' TTCA claims are **DISMISSED**.

12

II.   <u>Motion for Protective Order, and Alternate Motion to Stay</u>

    A. <u>Applicable Facts</u>

        As stated above, Deputy Thomas was indicted for first degree murder on February 20, 2014 in connection with the events underlying the instant suit; he is scheduled to stand trial in the 379th Judicial District Court of Bexar County in May, 2016.  (Dkt. # 22 ¶¶ 10–11; Dkt. # 22, Exs. 1, 2.)  On November 2, 2015, Plaintiffs served their first set of Interrogatories on Deputy Thomas, who alleges that the interrogatories cannot be answered without violating his privilege against self-incrimination.  (Dkt. # 22 ¶ 12.)  The interrogatories at issue ask Deputy Thomas to describe, among other things: (1) "the events leading up to and following the shooting of **MATHEW JACKSON**"; (2) the "force continuum procedures" used during the incident; (3) any "non-lethal options" used during the encounter; (4) all communications between Mr. Jackson and Deputy Thomas "at the time of the incident until the time [Mr. Jackson] was shot"; (5) whether Deputy Thomas had a Taser, pepper spray, ASP Baton, laser, and handcuffs at the time of the encounter, and his reasons for not using these devises.  (Dkt. # 22 ¶ 12; Dkt. # 22, Ex. 3.)  When Deputy Thomas' counsel conferred with Plaintiffs' counsel regarding his client's objections to the interrogatories, Plaintiffs' counsel responded that his clients' "primary motivation . . . is to make sure Anthony Thomas spends the rest of his life in jail."  (Dkt. # 22 ¶ 14; Dkt. # 22, Ex. 4.)

13

Deputy Thomas is concerned that the answers he provides to these interrogatories will be used against him during the criminal trial scheduled for May, 2016.  (Dkt. # 22 ¶ 14.)

Deputy Thomas has requested one of three courses of action: (1) entry of a protective order to protect Deputy Thomas from discovery until the conclusion of criminal proceedings; (2) entry of a scheduling order with essential dates, including the cut-off dates for discovery, at least six months after completion of the criminal proceedings; (3) entry of an order staying the matter until the criminal trial is completed.  (Dkt. # 22 ¶ 19.)

B.  Legal Standard

The Fifth Amendment right against self-incrimination is typically framed in terms of criminal proceedings; however, "[t]his privilege against compulsory self-incrimination 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'"  In re Corrugated Container Anti-Trust Litig., 620 F.2d 1086, 1091 (5th Cir. 1980) (quoting Kastigar v. U.S., 406 U.S. 441, 444 (1972)).  "The fact that [Fifth Amendment] privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection."  Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1086 (5th Cir. 1979) (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977)).

14

Where there are parallel civil and criminal proceedings arising out of the same set of facts, "[t]here is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of" these separate cases. Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc., 659 F.2d 660, 666 (5th Cir. 1981). However, there are "special circumstances" where "a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice." Id. at 668 (citing U.S. v. Kordel, 397 U.S. 1, 11–13 (1970)). Staying one of the parallel proceedings is well within the power of the district court, which has the authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Buehler v. City of Gonzales, 2015 WL 3651573 (W.D. Tex. June 11, 2015) (quoting U.S. v. Columb, 419 F.3d 292, 299 (5th Cir. 2005)). Where the district court finds that a stay is not necessary to protect a party's Fifth Amendment rights, it may exercise its discretion to "postpone civil discovery, or impose protective orders and conditions" to protect a party's rights. Akuna Matata Investments, Ltd. v. Tex. Nom Ltd. P'ship, No. SA–05–CV–1053, 2008 WL 2781198, at *1 (W.D. Tex. 2008) (citing SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980)).

When evaluating whether a stay of the civil proceeding is the appropriate measure to protect an individual's Fifth Amendment rights, the court should consider the following six factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighted against the prejudice to the plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am., 571 F. Supp. 2d 758, 762 (quoting SEC v. AmeriFirst Funding, Inc., No. 307–CV–1188–D, 2008 WL 866065, at *2 (N. D. Tex. 2008)); Akuna Matata, 2008 WL 2781198, at *2 (W.D. Tex. 2008).  Each of these six factors will be considered, below.

C. Analysis

1. Whether the Issues in the Criminal and Civil Cases Sufficiently Overlap

"The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."  AmeriFirst Funding, 2008 WL 866065, at *2 (quoting Volmar Distribs., Inc. v. NY Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).  Where the issues in the parallel civil and criminal proceedings overlap, this weighs in favor of a stay.  Id.

 Plaintiffs state that "there is little overlap between the criminal murder prosecution against Thomas and the civil rights lawsuit **against Bexar**

**County**.”  (Dkt. # 24 ¶ 7 (emphasis in original)).  This Court disagrees; the criminal case against Deputy Thomas arises from the same facts as the instant civil case.  That Bexar County is not a defendant in the criminal proceeding does not make this any less true.  Accordingly, this factor weighs in favor of granting a stay.

> 2.   Whether the Status of the Criminal Case Weighs in Favor of a Stay

“A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct.”  Gonzalez, 571 F. Supp. 2d at 762–63 (quoting Trs. of Plumbers & Pipefitters Nat’l Pension Fund v. Transworld Mech., Inc., et al., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)); see also Dresser Indus., 628 F.2d at 1376.

Here, Deputy Thomas has been indicted for first degree murder in connection with the incident forming the basis of the instant civil suit, and his criminal trial is scheduled to occur in May, 2016.  (Dkt. # 22, Exs. 1 & 2.)  Plaintiffs concede that Deputy Thomas’ indictment weighs in favor of a stay.  (Dkt. # 24 ¶ 8.)  This Court agrees; because Deputy Thomas has been criminally indicted in connection with the same facts underlying the instant civil suit, this factor weighs in favor of staying the case.

> 3.   Whether Plaintiff’s Private Interests Outweigh the Prejudice Caused by a Delay

When evaluating the burden a plaintiff would bear as the result of a stay, a court “may require a plaintiff to establish more prejudice than simply a

delay in its right to expeditiously pursue his claim." <u>Akuna Matata</u>, 2008 WL 2781198, at *3 (citing <u>State Farm Lloyds v. Wood</u>, No. H–06–504, 2006 WL 3691115, at * 2 (S.D. Tex. 2006)).  Courts have found that a plaintiff may be unduly prejudiced where a stay could prevent a plaintiff "from obtaining the discovery necessary to prove her case . . . because of the infirmity of potential witnesses." <u>Gonzalez</u>, 571 F. Supp. 2d at 763–64.  Conversely, courts have found that plaintiffs will not be unduly prejudiced by a stay where the criminal trial is expected to occur within the year.  <u>In re Enron Corp. Sec., Derivative & "Erisa" Litig.</u>, No. H-01-3624, 2003 WL 25508889, at *9 (S.D. Tex. 2003).

Plaintiffs argue that this factor weighs against granting a stay, because Deputy Thomas' trial date is uncertain, the integrity of the evidence connected to the civil proceeding will degrade as time passes, and because staying the case until "some distant day in the future" would be "fundamentally unfair for the Plaintiffs." (Dkt. # 24 ¶ 9.)  These fears are unfounded.  First, Deputy Thomas' trial is scheduled to take place only four months from now, in May of 2016.  (Dkt. # 22 ¶ 11; Dkt. # 22, Ex. 2.)  While Plaintiffs express the general concern that the integrity of the evidence in their case may be affected by a stay, they have not alleged that any witnesses to the incident will be unable to testify if a stay is granted, nor that any particular evidence will degrade and become unreliable if a stay is granted.  In light of such facts, the Court finds that Plaintiffs are not likely

to face any significant prejudice if a stay is granted; accordingly, this factor weighs in favor of granting a stay.

    4. <u>The Private Interests of the Defendant</u>

        "The propriety of a stay depends in part on the defendant's Fifth Amendment privilege against self-incrimination;" the Fifth Amendment "has long been held to extend to compelling answers by parties or witnesses in civil litigation . . . 'wherever the answer might tend to subject to criminal responsibility him who gives it.'" <u>Gonzalez</u>, 571 F. Supp. 2d at 761–62 (quoting <u>Nat'l Acceptance Co. of Am. v. Bathalter</u>, 705 F.2d 924, 926 (7th Cir. 1983)).  Only "when there is but a fanciful possibility of prosecution" is "a claim of Fifth Amendment privilege" unlikely to weigh in favor of a Defendant seeking a stay of a civil proceeding during the pendency of the criminal case.  <u>Gonzalez</u>, 571 F. Supp. 2d at 762 (quoting <u>Bathalter</u>, 705 F.2d at 927).

        Here, Plaintiffs' interrogatories seek detailed information regarding the incident for which Deputy Thomas will stand trial in a criminal proceeding in May, 2016.  These interrogatories clearly violate Deputy Thomas' Fifth Amendment privilege; further, Deputy Thomas cannot present a meaningful defense to the charges in the instant civil case without addressing this information.

Finally, the Court is troubled by the response of Plaintiffs' counsel, who is representing Plaintiffs in the *civil*, not criminal proceeding.[3]  Accordingly, this factor weighs in favor of staying the case for the duration of the criminal proceedings.

     5.  <u>The Interest of the Courts</u>

        A court's interest regarding a stay is usually only considered where a civil case has spent substantial time on the court's docket, and no indictment has been issued in connection with a potential criminal proceeding.  <u>See, e.g.</u> <u>Gonzalez</u>, 571 F. Supp. 2d at 765 (finding that "it is unrealistic to postpone indefinitely the pending action until criminal charges are brought") (quoting <u>Citibank N.A. v. Hakim</u>, No. 92 Civ. 6233, 1993 WL 481335, at *2 (S.D.N.Y. 1993)).  Here, the case was filed on June 24, 2015 (Dkt. # 1) and has been on the Court's docket for less than seven months, criminal charges were brought against Deputy Thomas before the civil proceeding was filed, and a criminal trial is imminent.  The Court's interests do not weigh in favor of a stay.

     6.  <u>The Public Interest</u>

        "The public has an interest in both the prompt resolution of civil cases as well as the prosecution of criminal cases."  <u>Gonzalez</u>, 571 F. Supp. 2d at 765

---

[3] When Deputy Thomas objected to the interrogatories, Plaintiffs' counsel responded that "the primary motivation for my clients is to make sure Anthony Thomas spends the rest of his life in jail."  (Dkt. # 22, Ex. 4.)

(quoting In re CFS-Related Securities Fraud Litigation, 256 F. Supp. 2d 1227, 1242 (N.D. Okla. 2003)).  Typically, this factor only weighs against the grant of a stay where a civil case is pending and no criminal investigation has begun.  See id.; AmeriFirst Funding, Inc., 2008 WL 866065, at *3.

       While the public certainly has an interest in the prompt resolution of the instant civil case, it also has an interest in protecting the constitutional rights of criminal defendants.  Accordingly, where denying a stay risks violating Deputy Thomas' constitutional rights in the criminal proceeding against him, and staying the instant civil case will not significantly delay its resolution, this factor weighs in favor of a stay.  Because each of the factors considered above weighs in favor of a stay, this Court finds that Deputy Thomas' Motion to Stay the Case is **GRANTED** for the pendency of the criminal case.  Plaintiffs' counsel has leave to conduct the depositions of Sergeants Carrillo, Rodriguez, Castillo, and Giblin, scheduled for February 9, 2016, provided that these depositions cover only the liability of Bexar County.

       Where a suit is stayed during the pendency of a criminal proceeding, an administrative closure is appropriate.  See Mire v. Full Spectrum Lending Inc., 389 F.3d 163, 167 (5th Cir. 2004).  An administrative closure is "a postponement of proceedings," rather than "a termination."  S. La. Cement, Inc. v. Van Aalst Bulk Handling, B.V., 383 F.3d 297, 302 (5th Cir. 2004).  A case that is

21

administratively closed "may be reopened upon request of the parties or on the court's own motion." Mire, 389 F.3d at 167.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Partial Motion to Dismiss.  (Dkt. # 35.)  The claim of Supervisory Liability against Sheriff Pamerleau is hereby **DISMISSED WITHOUT PREJUDICE**.  All claims arising under the Texas Tort Claims Act are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against Bexar County were not addressed in Defendants' Partial Motion to Dismiss, and accordingly are not dismissed at this time.  Finally, Deputy Thomas' Motion for Protection is **DENIED AS MOOT**; his Motion to Stay the Case is **GRANTED**, with the limited exceptions described above, and this case is **STAYED** for the pendency of the criminal proceedings against Deputy Thomas. (Dkt. # 22.)  The Clerk's Office is **DIRECTED** to administratively close this case pending further order of the Court.  Though administratively closed, this case will remain on the docket of this Court and may be reopened upon request of any party or on the Court's own motion.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, February 1, 2016

_____
David Alan Ezra
Senior United States Distict Judge